| UNITED STATES DISTRICT COURT | NOT FOR PUBLICATION |
| EASTERN DISTRICT OF NEW YORK | |

TORRANCE DICKERSON,

                            Plaintiffs,

**MEMORANDUM & ORDER**

– against –

THOMAS LAVALLEY, SUPERINTENDENT,      11-cv-02505 (ERK)

                            Defendants.

KORMAN, *J.*

Torrance Dickerson, currently incarcerated after a conviction for second-degree murder, petitions for a writ of habeas corpus. I generally assume familiarity with the circumstances of this case, but briefly: In the spring of 2006, Dickerson shot Antoine Butts to death inside a house in suburban Greenlawn, New York. After a jury trial in Suffolk County Supreme Court, Dickerson was convicted of Intentional Murder in the Second Degree, *see* N.Y. PENAL LAW § 125.25(1), and sentenced to twenty-five years to life imprisonment. The Appellate Division affirmed his conviction. *People v. Dickerson*, 889 N.Y.S. 2d 199 (N.Y. App. Div. 2009), *leave to appeal denied* 14 N.Y. 3d 799. Dickerson's petition asserts five grounds for relief, none of which meets the demanding standards for federal habeas corpus.

## DISCUSSION

**I.    Failure to Charge the Jury on Lesser-Included Offenses**

During the conference on jury instructions, Dickerson requested that the jury be charged on negligent homicide, *see* N.Y. PENAL LAW § 125.10, and second-degree manslaughter, *see id.*

§ 125.15, as lesser-included offenses of second-degree murder. The trial judge denied his request, and the Appellate Division affirmed. Read at the outer limits of liberal construction, Dickerson's petition alleges that the refusal to instruct the jury on lesser-included offenses denied him due process of law, a claim that is as yet not cognizable on habeas review. Neither the Supreme Court nor the Second Circuit has ever held that there is a due process right to a lesser-included charge in a non-capital case, and the Second Circuit has explained that to recognize such an entitlement on collateral review would announce a new rule, in violation of *Teague v. Lane*, 489 U.S. 288 (1989). *Jones v. Hoffman*, 86 F.3d 46, 48 (2d Cir. 1996).

## II. Failure to Charge the Jury on Justification

Also during the instructions conference, Dickerson asked for a charge on the defense of justification. *See generally Rodriguez v. Heath*, 138 F. Supp. 3d 237, 245–51 (E.D.N.Y. 2015) (Korman, J.) (discussing justification under New York law), *aff'd* 648 F. App'x 136 (2d Cir. 2016). The trial judge denied his request, and he raised the issue on direct appeal without presenting any federal basis for his claim. Not only did he rely solely on New York law, he also did not argue that the failure to charge on the defense of justification violated the Due Process Clause. The Appellate Division found that Dickerson was not entitled to a justification charge as a matter of New York law, because no reasonable view of the evidence supported a finding that he reasonably feared that Butts was about to use deadly force on him at the time of the shooting. I previously granted a habeas petition based in part on the conclusion that a New York court's refusal to give a justification instruction was erroneous as a matter of New York law, *id.* at 251, and resulted in a denial of due process by relieving the state of its burden to prove every element of the offense beyond a reasonable doubt, *id.* at 254.

§ 125.15, as lesser-included offenses of second-degree murder. The trial judge denied his request, and the Appellate Division affirmed. Read at the outer limits of liberal construction, Dickerson's petition alleges that the refusal to instruct the jury on lesser-included offenses denied him due process of law, a claim that is as yet not cognizable on habeas review. Neither the Supreme Court nor the Second Circuit has ever held that there is a due process right to a lesser-included charge in a non-capital case, and the Second Circuit has explained that to recognize such an entitlement on collateral review would announce a new rule, in violation of *Teague v. Lane*, 489 U.S. 288 (1989). *Jones v. Hoffman*, 86 F.3d 46, 48 (2d Cir. 1996).

## II. Failure to Charge the Jury on Justification

Also during the instructions conference, Dickerson asked for a charge on the defense of justification. *See generally Rodriguez v. Heath*, 138 F. Supp. 3d 237, 245–51 (E.D.N.Y. 2015) (Korman, J.) (discussing justification under New York law), *aff'd* 648 F. App'x 136 (2d Cir. 2016). The trial judge denied his request, and he raised the issue on direct appeal without presenting any federal basis for his claim. Not only did he rely solely on New York law, he also did not argue that the failure to charge on the defense of justification violated the Due Process Clause. The Appellate Division found that Dickerson was not entitled to a justification charge as a matter of New York law, because no reasonable view of the evidence supported a finding that he reasonably feared that Butts was about to use deadly force on him at the time of the shooting. I previously granted a habeas petition based in part on the conclusion that a New York court's refusal to give a justification instruction was erroneous as a matter of New York law, *id.* at 251, and resulted in a denial of due process by relieving the state of its burden to prove every element of the offense beyond a reasonable doubt, *id.* at 254.

There is no need, however, to engage in a similar analysis here. Dickerson has not made the requisite showing to overcome his procedural default, on direct appeal, of a due process claim based on the refusal of a justification instruction. Technically, that claim *is* exhausted—despite his failure to raise it in the state courts—because a federal claim is "deemed exhausted if it is, as a result [of not raising it], . . . procedurally barred under state law." *Ramirez v. Attorney General of the State of N.Y.*, 280 F.3d 87, 94 (2d Cir. 2001) (citing *Grey v. Hoke*, 933 F.2d 117, 120–121 (2d Cir. 1991)). Dickerson has already used up his sole opportunity for direct review, and the New York courts will not engage in collateral review of a new claim that could have been raised on direct review. N.Y. CRIM. PROC. LAW § 440.10(2)(c). But when the failure to exhaust state remedies imposes a procedural bar to further relief in state court, "federal habeas courts also must deem the claim[] procedurally defaulted." *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001). Dickerson's default on any federal claim respecting a justification instruction means that to win here, he must show cause for the default and prejudice flowing from it. *Id.* He has made neither showing.

### III. Insufficiency of the Evidence

Dickerson's third claim for relief is that the evidence presented by the District Attorney was insufficient to prove beyond a reasonable doubt his intent to kill Butts—the only element of second-degree murder that Dickerson contested at trial. As this court has previously explained, in assessing a sufficiency of the evidence argument raised in a habeas proceeding:

> "[T]he reviewing court must decide whether, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). 'What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state

> court decision was "objectively unreasonable."' *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam)."

*Santiago v. Kaplan*, 2014 WL 3696024, at *1 (E.D.N.Y. 2014) (Korman, J.).

On direct review, the Appellate Division held that the evidence was legally sufficient to prove intent beyond a reasonable doubt, and that determination was not objectively unreasonable. The jury heard testimony that Dickerson arrived at the house where the murder occurred angry, demanding to know where Butts was, and carrying what appeared to be a handgun inside a woman's purse. Dickerson and Butts had a running series of disagreements, and had physically fought in the house the day before (with sufficient intensity to punch a hole in the kitchen wall). On this record, it was wholly reasonable for the Appellate Division to conclude that a reasonable jury could have found beyond a reasonable doubt that Dickerson intended to kill Butts.

## IV. *Brady* Violations

Neither has Dickerson made out a viable claim under *Brady v. Maryland*, 373 U.S. 83 (1963). He argues that the District Attorney failed to turn over three pieces of purported *Brady* material in a timely fashion: 1) a supplemental police report containing statements by Butts and two other witnesses that he was shot by an unknown assailant, on the street, from a passing car, rather than by Dickerson inside the house, 2) statements by Dickerson's girlfriend, Veronica Kharjie, that she was outside when the shooting occurred, contradicting her earlier statements that she had witnessed it inside the house, and 3) statements of two other witnesses—neither party describes their contents—that supposedly would have been useful to impeach prosecution witnesses. Based on these supposed *Brady* violations, Dickerson moved for a mistrial, which the trial judge denied. The Appellate Division affirmed without explanation.

The Appellate Division's decision was not contrary to, or an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d)(1). As the Supreme Court has explained,

"there is never a real *Brady* violation unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler v. Greene*, 527 U.S. 263, 281 (1999) (internal quotation marks omitted).

Because Dickerson has not shown such a probability, the Appellate Division's decision that there was no *Brady* violation was not clearly unreasonable. First, statements that Butts was actually shot outside the home would have been exceedingly unlikely to move the jury in light of the overwhelming physical evidence—in addition to countervailing eyewitness testimony—that he was shot inside one of its bedrooms. The bedroom in question was spattered in blood, three fresh bullet holes were found in the bedroom door, and Butts' bloody clothes were recovered from the bedroom floor. Second, evidence that Veronica Kharjie had made inconsistent statements to the police would not have made a difference, because the District Attorney neither called her to testify nor presented the jury with any evidence respecting her presence during the shooting. Third, without any information as to the content of the supposedly withheld impeaching statements, Dickerson has not met his burden to establish a reasonable probability that the government's earlier disclosure would have led to a different result. *See id.* at 291.

## V. Excessive Sentence

Finally, Dickerson argues that his sentence was excessive and so violated the Eighth Amendment's prohibition on cruel and unusual punishment. For a conviction of second-degree murder, New York law calls for an indeterminate sentence incorporating a maximum term of life imprisonment, and a minimum term of at least fifteen years. *See* N.Y. PENAL LAW § 70.00 (describing sentence range for a Class A-I felony). Dickerson was sentenced to twenty-five years to life in prison. The Appellate Division's determination that such a sentence is not constitutionally

excessive for intentional murder can hardly be said to have rested on an unreasonable application of the Supreme Court's Eighth Amendment precedents.

## CONCLUSION

The petition for a writ of habeas corpus is denied.

SO ORDERED.

Brooklyn, New York
February 14, 2017

*Edward R. Korman*
Edward R. Korman
United States District Judge